RESIDENCE IN PLACES CEDED TO THE UNITED STATES.

Persons residing on lands purchased by, or ceded to, the United States, for navy yards, arsenals, &c., in this commonwealth, the state only reserving concurrent jurisdiction, as to the service of process therein, are not liable to taxation, and do not by such residence acquire any elective franchise, legal settlement, or right to the benefit of common schools, as inhabitants of the towns in which such territory is situated.

THE following opinion was given by the justices of the supreme judicial court, in answer to certain questions proposed

[1] 62 J. H. 102, 360.

to them by the house of representatives, touching the rights acquired by a residence on territory ceded by the state to the United States.

" The undersigned, justices of the supreme judicial court, have taken into consideration the several questions hereafter stated, upon which the honorable house of representatives has requested their opinion, by an order passed 6th March, 1841; which questions are of the following tenor : —

1. Are persons, residing on lands purchased by, or ceded to, the United States, for navy-yards, arsenals, dock-yards, forts, light-houses, hospitals, and armories, in this commonwealth, entitled to the benefit of the state common schools for their children, in the towns where such lands are located?

2. Does such residence exempt such persons from being assessed for their poll or estates, in the towns in which such places are located?

3. Will such residence, for the requisite length of time, give such persons, or their children, a legal inhabitancy in such towns, or in the commonwealth?

4. Are persons so residing entitled to the elective franchise in such towns?

Upon these questions the undersigned ask leave to submit the following opinion :—

It is hardly practicable to give a general answer, applicable to all the cases proposed in the first question ; because the question may depend somewhat upon the construction of the different acts, by which jurisdiction has been ceded by this commonwealth to the United States for various purposes, and these acts differ essentially from each other.   For instance, in two acts, comparatively recent, one passed 4th March, 1826, ceding to the United States a tract of land for the erection of a marine hospital at Chelsea, there is an express proviso and reservation, that all persons who may remove on said territory shall be deemed inhabitants of Chelsea, to enjoy the privileges and be subject to the duties of such inhabitants, except that they shall not be liable to serve on juries, or do military duty. Whereas, in the act passed Feb. 20th, 1828, ceding jurisdiction

53

to the United States of another tract in Chelsea, for the purpose of building a naval hospital, there is no such provision, and no reservation, except that common to all those acts, of concurrent jurisdiction for the service of civil and criminal process. So, different regulations are contained in several acts ceding jurisdiction to the United States, for the purpose of building light-houses, beacons, break-waters, and the like. Perhaps a fuller and more careful analysis would show, that when jurisdiction is ceded for the erection of forts, dock-yards, and works of a purely military and naval character, connected with the defence of the country and operations of war, the exclusive jurisdiction is granted to the United States, with the single exception of service of process issuing under the authority of the state within which such territory is; whereas, if the object of the cession of jurisdiction is of a civil nature, the assent of the state is limited and qualified by such reservations, as the legislature ceding the jurisdiction may think expedient for the safety and convenience of their own citizens.

But we presume, from the nature and form of the questions, that it was not the intention of the honorable house to request an opinion upon all the various acts of cession, by which jurisdiction has been granted to the United States, from the establishment of the general government; these are numerous and various, and an examination of them would require much time and labor. We consider that the questions were intended to apply to the larger and more important establishments, as the navy-yard in Charlestown, and the arsenal in Springfield.

The constitution of the United States, art. 1, §. 8, provides, that congress shall have power to exercise exclusive legislation, in all cases whatsoever, over all places purchased by the consent of the legislature of the state in which the same shall be, for the erection of forts, magazines, arsenals, dock-yards, and other needful buildings. The jurisdiction in such cases is put upon the same ground, as that of the district ceded to the United States for the seat of government; and, unless the consent of the several states is expressly made conditional or limited by the act of cession, the exclusive power of legisla-

tion implies an exclusive jurisdiction; because the laws of the several states no longer operate within those districts.

The earlier and more important acts of this commonwealth on this subject were that of 1798, c. 13, granting jurisdiction to the United States of Castle Island and Governor's Island in the harbor of Boston, and a tract of six hundred and forty acres in Springfield, for the purpose of erecting forts, magazines, arsenals, dock-yards, and other needful buildings; and that of 1800, c. 26, granting the consent of the commonwealth to the United States, to purchase a tract of land in Charlestown, described, for the purpose of a navy or dock-yard, or both, and erecting magazines, arsenals, and other needful buildings. The territory of the navy-yard was somewhat extended by the act of 1825, c. 8, but upon the same terms specified in the original act.

The only limitation or proviso in the act of 1800, granting the consent of this commonwealth to the purchase of a tract of land in Charlestown for a navy-yard and other purposes, is this,—that the consent of the state is granted upon the express condition, that this commonwealth shall retain a concurrent jurisdiction with the United States in and over the tract of land aforesaid, so far as that all civil, and such criminal process as may issue under the authority of this commonwealth, against any person or persons charged with crimes committed without the said tract, may be executed therein in the same way and manner, as though such consent had not been granted. The same provision is contained in the act of 1798, c. 13, ceding jurisdiction over Castle Island for a fort, and over a tract of land in Springfield, for an armory and arsenal.

These provisions have been the subject of judicial consideration and decision in several cases. The leading cases on this subject in this state are *Commonwealth* v. *Clary*, 8 Mass. 72, and *Mitchell* v. *Tibbetts*, 17 Pick. 298. Without stating these cases particularly, we are of opinion, that in cases where the general consent of the commonwealth is given to the purchase of territory by the United States, for forts and dock-yards, and where there is no other condition or reservation in the act

granting such consent, but that of a concurrent jurisdiction of the state for the service of civil process, and criminal process against persons charged with crime committed out of such territory, the government of the United States have the sole and exclusive jurisdiction over such territory, for all purposes of legislation and jurisprudence, with the single exception expressed; and consequently, that no persons are amenable to the laws of the commonwealth for crimes and offences committed within said territory; and that persons residing within the same do not acquire the civil and political privileges, nor do they become subject to the civil duties and obligations, of inhabitants of the towns, within which such territory is situated.

What would be the effect, were other conditions annexed to the act, granting the consent of the commonwealth to the purchase of territory, and in terms reserving the full concurrent jurisdiction of the state: whether the consent would be deemed legally inoperative, or whether the condition and reservation would be void, or whether the jurisdiction would be deemed concurrent, we give no opinion.

We proceed to apply the opinion thus stated to the questions specifically proposed by the honorable house of representatives.

1. We are of opinion, that persons residing on lands purchased by, or ceded to, the United States for navy-yards, forts, and arsenals, where there is no other reservation of jurisdiction to the state, than that above mentioned, are not entitled to the benefits of the common schools for their children, in the towns in which such lands are situated.

2. We are of opinion, that such residence does exempt such persons from being assessed for their polls and estates to state, county, and town taxes, in the towns in which such places are situated.

3. Understanding as we do, by the terms of this question, that the term 'legal inhabitancy,' is used synonymously with 'legal settlement,' for the purpose of receiving support under the laws of the commonwealth for the relief of the poor, we are of opinion, that such residence, for any length of time, will

not give such persons or their children a legal inhabitancy in such town.

4. We are also of opinion, that persons residing on such territory do not thereby acquire any elective franchise, as inhabitants of the towns in which such territory is situated.

LEMUEL SHAW,
SAMUEL PUTNAM,
S. S. WILDE,
CHARLES A. DEWEY.

*Boston, March* 10, 1841."